UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JEFFREY S. CHARNEY,
Plaintiff,
v.
CAROLYN W. COLVIN, Acting Commissioner of Social Security,
Defendant.

Case No. CV 13-7080 JC

MEMORANDUM OPINION

## I. SUMMARY

On September 24, 2013, plaintiff Jeffrey S. Charney ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 26, 2013 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On September 15, 2010, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 221, 225). Plaintiff asserted that he became disabled on April 12, 2010, due to degenerative disc disease in his back and neck, bilateral carpal and cubital tunnel syndrome, loss of strength in his left hand and arm with difficulty writing, numbness and weakness in both legs, loss of muscle strength limiting movement of his left leg, widespread pain in all joints and muscles, arthritis, blurred vision with blindness in his right eye from birth, extreme fatigue, and widespread neurological issues. (AR 250). The ALJ examined the medical record and heard testimony from plaintiff and a vocational expert on January 30, 2012 and June 6, 2012. (AR 93-138).

On June 22, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 27-37). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: cervical and lumbar spine degenerative disc disease, status post-left cubital and carpal tunnel release surgery, obesity, fibromyalgia, and left knee meniscal tear (AR 29); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 32); (3) plaintiff retained the residual functional capacity to perform the full range of sedentary work (20 C.F.R. §§ 404.1567(a),

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

416.967(a)) (AR 32); (4) plaintiff could not perform his past relevant work (AR 35); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 36); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 33-34).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R.

///

Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility

findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

**2. Analysis**

Plaintiff contends that the ALJ inadequately evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 2-14). The Court finds no material error in the ALJ's assessment of plaintiff's credibility. Accordingly, a remand or reversal is not warranted.

First, the ALJ properly discounted the credibility of plaintiff's subjective complaints to the extent they were inconsistent with plaintiff's daily activities and other conduct. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony); see also Reddick v. Chater, 157 F.3d 715, (9th Cir. 1998)

(inconsistency between claimant's level of daily activities and the claimant's alleged limitations may justify discounting claimant's credibility). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling pain, plaintiff was able, albeit with some difficulty, to care for himself, drive a car, read, watch television, make his own meals, wash dishes, clean, grocery shop "daily," visit with friends/family "1-2 times weekly," play games and do research on a computer, and talk on the telephone. (AR 35, 264-74, 291-98).

While plaintiff correctly notes (Plaintiff's Motion at 13) that "one does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony. See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted). Here, the ALJ properly discounted plaintiff's subjective symptom testimony since plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).

Second, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's relatively conservative medical treatment. See, e.g., Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with the

"supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); see Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). For example, as the ALJ noted, contrary to plaintiff's allegedly disabling symptoms, since the onset date plaintiff has received only "a couple" epidural injections, periods of physical therapy, and conservative care with medication. (AR 30-31, 35; AR 552-53 (epidural injections); AR 410-514, 768-71, 823-24, 877-81, 896-97, 908-30 (physical therapy); AR 671 (evaluating neurosurgeon declining to recommend surgical intervention and recommending continue "conservative management" for plaintiff's condition); AR 857-58 (recommending "conservative care"). Although plaintiff asserts (and essentially testified) that he took "numerous pain medications" (Plaintiff's Motion at 8) (citing AR 108-11, 127, 131), as the ALJ noted, the record contains "no credible evidence of [plaintiff's] regular usage of strong medication to alleviate pain" or related side effects "that would significantly impair [plaintiff's] ability to do basic work activities." (AR 35, 675-1077). With respect to plaintiff's hand impairment, as the ALJ noted, there is no evidence that plaintiff experienced a particularly poor result from the carpal and cubital tunnel release surgery, or that plaintiff required *ongoing* use of wrist braces. (AR 34). As for plaintiff's knee impairment, the record does not reasonably reflect that plaintiff was prescribed treatment other than physical therapy, or that plaintiff was *prescribed* an assistive device for ambulation or required *ongoing* use of a knee brace.[2] (AR 34). In addition, contrary to

---

[2]As plaintiff noted, medical records reflect that plaintiff reportedly used a cane for ambulation and, on one occasion, was fitted for knee braces. (Plaintiff's Motion at 8) (citing AR 420 [knee braces]; AR 421, 603, 661, 880 [cane]). Nonetheless, plaintiff points to nothing in the

(continued...)

plaintiff's suggestion (Plaintiff's Motion at 9-10), the ALJ did not fail properly to consider plaintiff's fibromyalgia and related symptoms. As the ALJ noted, the record does not reflect (and plaintiff points to no evidence to the contrary) that plaintiff received intensive medical treatment on a continuing basis for fibromyalgia. (AR 34).

While plaintiff argues that the record reflects more extensive treatment for his condition (Plaintiff's Motion at 8-10), the Court will not second guess the ALJ's reasonable determination to the contrary, even if the evidence could support inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citation omitted).

Third, the ALJ properly discounted plaintiff's credibility in part because plaintiff's pain allegations were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, despite plaintiff's complaints of persistent body pain and radicular neck and back pain, a July 2010 electrodiagnostic study of plaintiff's lower extremities was generally unremarkable. (AR 30) (citing Exhibit 6F at 29 [AR 543]). As the ALJ noted, the report of an October 2010 rheumatology examination reflected, in part, that (i) plaintiff was overweight and walked with a left-sided limp; but that (ii) plaintiff otherwise had normal ranges of motion in his upper and lower extremities with no neurological deficits and should continue to treat his fibromyalgia with Cymbalta. (AR 30) (citing Exhibit 6F at 16 [AR 530]). Also, August 2011 MRI scans of plaintiff's cervical and lumbar spines revealed

---

[2](...continued)
medical record which reflects that he was prescribed the cane, or that he used the leg braces on an "ongoing" basis.

degenerative disc disease but only moderate spinal canal stenosis. (AR 31) (citing Exhibit 9F [AR 592-674]; Exhibit 10F [AR 675-1077]; see AR 1000). In September 2011, the results of electromyography testing of plaintiff's right upper and lower extremities and cervical, thoracic and lumbar spines were "unremarkable." (AR 31) (citing Exhibit 10F at 123 [AR 797]).

In addition, on January 14, 2012, an examining neurosurgeon opined that plaintiff's persistent left leg weakness was "unusual and at least part[l]y effort related," and that neither plaintiff's leg weakness nor his joint pain could readily be explained. (AR 31) (citing Exhibit 10F at 266 [AR 940]). During a January 20, 2012 examination, plaintiff reported body-wide pain, residual limitation in left-hand functionality, as well as sensory problems and weakness and inability to move his extremities. (AR 656). As the ALJ noted, however, upon examination plaintiff displayed some spinal tenderness and sensory deficits but had no positive radicular pain signs or deficits of gait, plaintiff had "5/5 strength" in his right arm and leg, and although plaintiff initially said he could "barely" lift his left limb on his own, when the examining physician did it for him, plaintiff was able to maintain the position with good strength. (AR 31) (citing Exhibit 9F at 65-70 [AR 656-61]). In March 9, 2012, an examining neurosurgeon noted, in part, that (i) plaintiff's whole body pain was likely "related to an underlying neurologic process," but any diagnosis was "uncertain"; and (ii) plaintiff had "hand dexterity issues and gait instability [and] hyperreflexia in the lower extremities" that seemed "out of proportion to the severity of the stenosis in [plaintiff's] cervical spine" and out of proportion to plaintiff's "relatively unremarkable" EMG. (AR 31, 999-1000).

Moreover, the ALJ found that "no treating or examining medical source assessed [plaintiff] with functional limitations to the degree [plaintiff] alleges

///

///

secondary to back pain complaints."[3] (AR 34). The ALJ did not materially err in discounting the credibility of plaintiff's subjective statements, in part, on this basis. Cf. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); see generally Foster v. Astrue, 2009 WL 815996, *6 (N.D. Cal. Mar. 27, 2009) (ALJ "entitled to rely not only on what the record says, but also on what it does not say.") (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted)).

While plaintiff contends that the medical evidence does not reflect that plaintiff was exaggerating his symptoms, and that the ALJ's credibility assessment did not adequately account for symptoms related to plaintiff's fibromyalgia diagnosis (Plaintiff's Motion at 9-12), the Court will not second-guess the ALJ's contrary findings which are supported by substantial evidence in the record. Robbins, 466 F.3d at 882 (citation omitted).

Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

///

---

[3]To the extent plaintiff argues that the ALJ's finding in this respect is refuted by new evidence he submitted to the Appeals Council in support of his request for review of the ALJ's June 22, 2012 decision (*i.e.*, a September 24, 2012 Physical Residual Functional Capacity Questionnaire from a treating physician who essentially opined that plaintiff was unable to engage in even sedentary work) (Plaintiff's Motion at 12-13; Plaintiff's Ex. A; AR 2), plaintiff's argument lacks merit. The Appeals Council properly declined to consider the new evidence because it reasonably concluded that such evidence applied to "a later time." (AR 2); see, e.g., 20 C.F.R. § 404.970(b) (Appeals Council required to consider "new and material evidence . . . only where it relates to the period on or before the date of the [ALJ's] hearing decision."). Consequently, the new evidence did not, as plaintiff suggests, become part of the administrative record which this Court was required to consider when reviewing the ALJ's decision. Cf. Brewes v. Commissioner of Social Security Administration, 682 F.3d 1157, 1162-63 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citation omitted).

**B. The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity**

**1. Pertinent Law**

At step four of the sequential evaluation process, the Commissioner may deny benefits if a claimant possesses the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f); see also Pinto v. Massanari, 249 F.3d 840, 845 (2001) ("At step four, claimants have the burden of showing that they can no longer perform their past relevant work.") (citations omitted). Residual functional capacity represents "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's residual functional capacity, an ALJ is required to consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. Robbins, 466 F.3d at 883 (citations omitted); see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (residual functional capacity is assessed "based on all of the relevant evidence in [the] record.").

**2. Analysis**

Plaintiff contends that a reversal or remand is warranted because the ALJ's residual functional capacity assessment was not supported by substantial evidence. (Plaintiff's Motion at 14-17). More specifically, plaintiff essentially argues that, in assessing plaintiff's residual functional capacity, the ALJ erroneously (1) failed to account for the impact of plaintiff's subjective symptoms; (2) failed to consider the combined effect of plaintiff's multiple impairments; (3) failed to account for "manipulative limitations" in plaintiff's "left dominant upper extremity"; and (4) relied on a state agency reviewing physician's opinion that was based on an "incomplete medical file." (Plaintiff's Motion at 14-17). The Court disagrees.

///

First, as discussed above, the ALJ properly discounted the credibility of plaintiff's subjective complaints to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (AR 33-35). Accordingly, the ALJ properly omitted from his residual functional capacity assessment any inconsistent *subjective* functional limitation asserted by plaintiff.

Second, the Court is not persuaded that a reversal or remand is appropriate based on the ALJ's asserted failure to consider "the combined effect" of plaintiff's impairments as the record is susceptible to an interpretation that the ALJ did so. In the administrative decision, the ALJ specifically noted that he was required to "consider all of [plaintiff's] impairments, including impairments that are not severe" when assessing residual functional capacity, and that the ALJ based his residual functional capacity assessment for plaintiff on a "consideration of the entire record." (AR 29, 32) (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; Social Security Ruling 96-8P ("RFC assessment considers [] functional limitations and restrictions that result from [a claimant's] medically determinable impairment or combination of impairments, including the impact of any related symptoms.") (emphasis added)). In any event, any claim of error based on plaintiff's conclusory assertions in this matter does not merit relief. Cf. Carmickle, 533 F.3d at 1161 n.2 (courts "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation and internal quotation marks omitted).

Third, contrary to plaintiff's suggestion, the ALJ was not required to include in the residual functional capacity assessment plaintiff's subjective allegations of "manipulative limitations" in his "left [] upper extremity." As discussed above, the ALJ properly discredited plaintiff's subjective statements regarding such alleged limitations for clear and convincing reasons. To the extent plaintiff contends that the medical evidence also supports plaintiff's alleged manipulative limitations (Plaintiff's Motion at 16), the Court will not second guess the ALJ's

implicit determination otherwise which is supported by substantial evidence in the record. See Robbins, 466 F.3d at 882 (citation omitted).

Finally, the ALJ properly relied on the opinions of the state agency reviewing physicians in determining that plaintiff could perform a full range of sedentary work. As the ALJ noted, the state agency reviewing physicians effectively found that plaintiff retained the residual functional capacity to perform sedentary work. (AR 34, 401-08, 587). The opinions of the state agency physicians constitute substantial evidence supporting the ALJ's similar residual functional capacity assessment since they are supported by the medical record as a whole and are consistent with it. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). To the extent plaintiff argues otherwise (Plaintiff's Motion at 15), the Court disagrees. Specifically, Dr. Jao's November 4, 2010 Physical Residual Functional Capacity Assessment is not the only opinion from a state agency reviewing physician. On March 8, 2011, Dr. Astarjian reviewed the record medical evidence – which presumably included the treatment records in Exhibits 5F (AR 410-514 [dated April 12, 2010 through December 30, 2010]) and 6F (AR 515-86 [dated January 1, 2010 through January 13, 2011]) – and affirmed Dr. Jao's November 4, 2010 assessment. (AR 587). Although the state agency reviewing physicians' residual functional capacity assessment for plaintiff did not account for plaintiff's subsequent medical records (*i.e.*, Exhibit 9F [AR 592-674] and Exhibit 10F [AR 675-1077]), the ALJ's clearly did. (AR 31) (citing Exhibits 9F-10F). Moreover, plaintiff points to nothing in such records that is materially inconsistent with the state agency physician's opinions.

Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

///

///

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 21, 2014

/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE